## WALTER MUISHNECK AND ARCHIBALD SNAITH *v.* THE AMERICAN STEAMSHIP ST. HELENS.

### May 7, 1914.

1. *Admiralty—Disobedience of seamen—Discharge:* Admiralty precedents do not favor the discharge of seamen for a single offense, unless it is of an aggravated character.

2. *Same—Same—Same—Reinstatement:* A seaman discharged for such offense should generally be given an opportunity to return to the employment of the ship, with such penalty as is reasonable under the circumstances.

*In Admiralty:* Libel *in rem.*

*G. A. Davis* for libelants.
*G. S. Curry* for libellee.

Dole, J.  The libel in this case complains that the libelants were discharged by the master at Honolulu, wrongfully and illegally and in violation of their contract and shipping articles, and they claim return passage money, their wages to the termination of the voyage, and one month's extra wages, and such further indemnity as the court may award.

They shipped on the libellee at Seattle, in the State of Washington, about September 19th, last year, for a voyage from Seattle to Rainier, Oregon, and thence to Honolulu and such other ports as the master might direct, and back to the final port of discharge, in Washington, Oregon, or California, at a rate of wages of fifty dollars a month, such voyage not to exceed four months.

While in the port of Honolulu the crew, with the assistance of longshoremen, were engaged in discharging lumber from the libellee.  On Saturday, October 18th, at five o'clock P. M., libelants quit work, refusing to continue longer that day, whereupon the master instructed the mate

to discharge them. They remained on board until Monday morning, at which time, without making any request to be reinstated, they were on hand, apparently expecting, or hoping, to be allowed to continue in the employment of the libellee. The master offered to so continue them, subject to the forfeiture of their wages for the Sunday intervening. This they refused to accept, and were paid off at the commissioner's office, under their protests.

It appears by the working rules of the Sailors' Union of the Pacific, which according to the evidence is recognized by all ship owners on the Pacific Coast, that nine hours are fixed as a day's work in loading and unloading vessels, and fifty cents an hour is allowed for working over time. In this case, during the previous days of the week, unloading had been discontinued at four o'clock P. M., after eight hours work; on the Saturday in question it was continued past that hour, notice having been given to the men during the afternoon that work was to continue that day till six o'clock.

The action of the libelants in quitting work necessitated the discontinuance of the work of unloading for that day, according to the testimony of Mr. Hanson, the mate, as their departure broke up one gang, making it undesirable to go on with the rest of the force, considering the subsequent work of fumigating and time for supper.

[1] The practice in these cases is lenient towards seamen, and does not encourage dismissal for a single offense, unless it is of an aggravated character. The act of the libelants in quitting work and refusing to go on was subversive of discipline and contrary to their contract with the ship; [2] and yet, in view of the fact that their conduct during the voyage so far had been good, as shown by the evidence, it would have been in accordance with the practice in such cases that the master should have given them an opportunity to return to the employment of the ship; and if the case showed no such opportunity offered

to these men by the master, I should be disposed to consider that the discharge was unnecessary and unjust.  But as the master did give them an opportunity to return to work on Monday, subject to the loss of wages for the day before, being Sunday, I feel that he acted as reasonably in the matter as the circumstances called for; that the loss of wages for one day was not a severe punishment for their conduct, but, on the contrary, a mild one.  Refusing such offer, libelants are without any substantial grievance in this case.  Their conduct in quitting work, without complaint as to any hardship, without any request for a cessation of work on account of fatigue, or other good reason, and their positive language, as testified to, refusing to continue, justified the master in taking some action; and the action taken in discharging the men and later in giving them a chance to return, subject to the penalty mentioned, was, I think, within his rights and not unreasonable.

There was some testimony as to the heat of the day, the unfavorable state of things within the hold of the ship, but this evidence was not sufficient to enable the court to arrive at the conclusion that they were treated with unreasonable severity in being kept at work for so long a time during the day on which they quit.

I find for the libellee, dismissing the libel.